CHARLES B. LINTON, Respondent, *v.* THE UNEXCELLED FIRE-WORKS COMPANY, Appellant.

A written agreement, while it exists, must control as to all the terms expressed in it, although those terms differ from the prior oral agreement. If the difference was caused by mutual mistake, it is necessary to reform the contract so as to express the true agreement.

(Submitted October 8, 1891; decided October 27, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 10, 1891, which reversed a judgment so far as it was in favor of defendant, entered upon a decision of the court on trial at Special Term and ordered judgment for

plaintiff, and which affirmed so much of said judgment as dismissed a counter-claim of defendant.

This action was brought to reform a contract between the parties to require the defendant to issue to the plaintiff four and one-half shares of its capital stock, pursuant to an alleged agreement actually made.

The complaint alleges in brief that on July 14, 1884, the defendant hired the plaintiff to be superintendent of its fireworks factory under an oral agreement which was as follows: (1) That the plaintiff should be paid for his services the fixed sum of $2,000 per year in cash, and also (2) That he should be allowed each year an additional sum equal to the proportion of the net earnings of the company which should be based on $3,000 worth of its stock (30 shares), and that when such earnings should equal the said par value of the said thirty shares of stock ($3,000), such shares should be issued to him, the said total sum thus accumulated to his credit and held by the company for him to be taken in payment therefor.

Further facts are stated in the opinion, which is given in full.

" The trial court found the original agreement between the parties was based upon the earnings of the thirty shares of stock, instead of upon the dividends. It found the written contract was executed in January, 1886, and while the oral contract was in existence. That written contract used the word ' dividends,' instead of ' earnings.'

" The plaintiff asked to have the written paper reformed so as to express the real agreement, and he alleged that the word ' dividends' was used in the writing by mutual mistake. There was substantially no contradiction in the evidence as to the fact that the parties meant the written contract to embody the terms of the oral. The person who dictated the agreement to the stenographer employed by defendants, was not himself present when the oral agreement between the plaintiff and the then president of the defendant was made, and so he asked the plaintiff what the terms were under which he was employed by defendant. While not positive as to the reply of the plaintiff whether he used the word ' earnings ' or ' dividends ' as the importance of the distinction had not then appeared ; he says he is of the impression that plaintiff used the word ' dividends.'

At any rate that word appears in the written contract signed by both parties.

"The learned judge dismissed the plaintiff's complaint, because he said there was no proof of a mutual mistake in the use of the word 'dividends' in the written contract. The court also overruled the defendant's counter-claim on the ground that the payment of the 22 shares of stock, although an over-payment under the written contract was yet a voluntary one, and so could not be recovered back. Both parties appealed and the General Term, on the plaintiff's appeal, reversed the judgment dismissing the complaint, and held the plaintiff entitled to recover the shares of stock claimed by him, and without reforming the written agreement, gave judgment absolute in plaintiff's favor, decreeing that defendant should issue the four and a half further shares claimed by the plaintiff. The judgment against the counter-claim of the defendant was on defendant's appeal affirmed, with costs.

"We think the General Term erred in this disposition of the question. There was an original oral agreement between the parties, and the court finds that it provided for the issuing of the stock based upon earnings instead of dividends.

"The written agreement was intended to embody the terms of the oral one. It is said that Mr. Johnson, who acted for the defendant and dictated the substance of the agreement to be written out, no doubt intended to embody the terms of the oral agreement, but only as he understood them, and that as he understood them to be dividends he has made no mistake on the part of defendant, and that hence there was no mutual error within the meaning of the law, and so the written agreement should not be reformed.

"Having found that the terms of the oral agreement included the earnings of the company as distinguished from the dividends, and the parties really intending to put in writing the terms of such oral agreement, if Mr. Johnson placed the word 'dividends' therein, supposing that such was one of the terms of the agreement, when in truth it was not, and if the plaintiff signed the same supposing that it actually embodied the terms of the oral contract, when in truth it did not, we think a case was made out for the reformation of the written

contract. The mistake of Mr. Johnson was in regard to what were in reality the terms of the oral contract, and when he intended to embody these terms in the written contract, although he placed therein just what he intended to if he, in fact, mistook those terms and if the plaintiff mistakenly supposed he had embodied in the writing the terms of the oral contract when he had not, a mistake was made which a court of equity has power to relieve against. We do not, however, think that relief could be had by reference only to the original oral contract and in spite of the terms of the subsequent written one, without reforming such written one so as to conform to the truth.

·" A written contract is always set out as the exponent of the oral understanding of the parties. While it exists as a full and legal agreement it must control as to all the terms expressed in it, and when such terms differ from those of prior oral ones, the writing must control. It is necessary, therefore, to reform it so as to express the true agreement. In this case the learned judge refused to find that neither party understood the words used in the written agreement to mean differently than the words of the oral agreement. There is some confusion in the findings in the case caused, as I think, by the views of the learned judge as to the rights of the parties, assuming that Mr. Reynolds meant to use the word ' dividends ' in the written agreement. In that event he thought plaintiff ought not to have the contract reformed. Differing somewhat with those views of the case and regarding the order and judgment of the General Term as in any event erroneous, we have thought it best for all parties that there should be a new trial and the whole case more fully presented to the court.

" We think the judgments of the General and Special Terms should be reversed and a new trial granted, with costs to abide event."

*Leslie W. Russell* for appellant.

*W. J. Gaynor* for respondent.

PECKHAM, J., reads for reversal.
All concur.
Judgment reversed.