[Civ. No. 1319.  First Appellate District.—March 18, 1914.]

## C. F. ELDRIDGE, Appellant, v. EMMA M. MOWRY et al., Respondents.

AGENCY—UNDISCLOSED PRINCIPAL—RIGHT TO SUE ON CONTRACT.—An undisclosed principal may sue on a contract entered into by an agent for his benefit.

ID.—CORPORATION ORGANIZED TO RESTORE RECORD TITLES—AGENCY FOR FIRM OF ATTORNEYS.—Where a firm of attorneys organizes a corporation to restore the record titles to real property under the Mc-Enerney Act (Stats. 1906, p. 73), dictates its management, owns practically all its capital stock, and the corporation has no employees, brings no suits in its name, and has no office except that its name appears on the door of one of the rooms constituting the .offices of the firm of attorneys, the corporation is a mere agency of the firm and the firm may sue on contracts executed by the corporation for the restoration or quieting of titles.

ID.—CONTRACTS—INTERPRETATION—SITUATION OF PARTIES—SURROUNDING CIRCUMSTANCES.—In ascertaining the intention of the parties with reference to written contracts, courts are not always confined to the mere face of the writing, but should take into consideration the situation and relation of the contracting parties, and the circumstances surrounding the execution of the instrument.

ID.—SIGNATURE TO CONTRACT—PLACE AND EFFECT.—A party is presumed to have assented to all the terms of a written contract when he signs it; and the place of the signature is immaterial except in cases where the instrument is required by law to be subscribed.

ID.—CONTRACT TO QUIET OR RESTORE TITLE—AMOUNT OF COMPENSATION. A printed *addendum*, just below the signature of the applicant on a written contract for the restoration of a record title to real property, that the sum stipulated in the contract for the performances of the service shall not apply in case of a contest, constitutes a part of the agreement, where the only evidence as to the circumstances under which the contract was executed discloses that the applicant was informed that the charges would be the same as those of an attorney who had been previously consulted, and that he thereupon signed the contract without reading it; no fraud or mistake being alleged.

ID.—INTERPRETATION OF CONTRACT—PREVENTION OF FAILURE OF JUSTICE.—In construing such agreement the court will follow, where it is possible, that construction which prevents a failure of justice.

ID.—PLEADING—AMENDMENT OF COMPLAINT AFTER SUBMISSION OF CASE. Where the complaint, in an action by an assignee to recover for

services rendered under such contract, declares on an account stated, the court does not, after the case is submitted, abuse its discretion in granting a motion setting aside the submission and permitting the plaintiff to file an amended complaint declaring on the contract itself.

ID.—ASSIGNED CAUSE OF ACTION—EFFECT OF SECOND ASSIGNMENT.—If the first assignment of the account sued on was sufficient, a second assignment prior to filing the amended complaint was unnecessary and did not affect the right to amend.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Brittain & Kuhl, for Appellant.

R. H. Cross, Roger Johnson, and Arthur H. Brandt, for Respondents.

KERRIGAN, J.—This is an appeal by plaintiff from a judgment rendered in favor of the defendants.

The case grows out of the destruction of the public records by the San Francisco fire of April, 1906. Upon the adoption by the legislature of the act of June 16, 1906, entitled, "An Act to provide for the establishment and quieting of title to real property in case of the loss or destruction of public records" (Stats. 1906, [Ex. Sess.], p. 78), commonly referred to as the McEnerney Act, Tobin & Tobin, a copartnership of attorneys at law, took steps for the handling of suits brought under said act. Among their clients was the Hibernia Savings & Loan Society, many of whose depositors entrusted to Tobin & Tobin the work of establishing the record title to their real property. For convenience in the transaction of its business Tobin & Tobin maintained their offices in the Hibernia Savings & Loan Society Building, and created a department therein specially devoted to the title restoration branch of their practice. They formed a corporation under the name of the Hibernia Title Restoration Company. This company's name, or the prominent words thereof, were placed on the door of one of the offices occupied by Tobin & Tobin; its entire capital stock was issued to and was owned by mem-

bers of the Tobin family and two employees of the copartnership. The corporation, after its organization, so far as is disclosed by the record, never performed any corporate act. It conducted no business other than to receive applications to restore record title to real property; made no expenditures, and never brought or defended a suit. In short, its sole purpose seems to have been one of convenience to the copartnership. Emma M. Mowry and George B. Mowry, her husband, defendants and respondents herein, were borrowers from the Hibernia Savings and Loan Society, their loan being secured by mortgage on property belonging to Emma M. Mowry, valued at about twenty-four thousand dollars, and situated at Grove and Buchanan streets in the city and county of San Francisco. In April, 1907, George B. Mowry called at the offices of Tobin & Tobin, in the room where the work of preparing the papers in suits to restore title to real property was being carried on, and there signed a contract with the Hibernia Title Restoration Company to have the title to the property mentioned restored. Thereupon Tobin & Tobin prepared the necessary papers, and instituted the necessary action in the name of Emma M. Mowry. An answer to this action was filed by the trustee in bankruptcy of one Charles Alpers, who claimed ownership of the property. The case was tried before a jury, and after a vigorous contest of some three weeks' duration, a verdict was rendered in favor of the plaintiff therein.

At the conclusion of the case Tobin & Tobin rendered a bill to Mowry and his wife for the costs they had expended during the trial and in connection with the action, amounting to the sum of $594.61, and also made a charge of $1,000 for their services in maintaining the action. As against this amount credit was given for the sum of $75, already paid by the defendants, leaving a balance alleged to be due of the sum of $1,519.61. The defendants refused to pay this amount for the reasons hereinafter stated, and the present action was brought for its recovery by the assignee of Tobin & Tobin.

At the trial the defendants resisted the action upon two main grounds: 1. That the contract sued upon was not entered into by them with Tobin & Tobin, to whom they denied any indebtedness, but with the Hibernia Title Restoration

Company; and 2. That such contract limited their liability to the sum of seventy-five dollars.

To meet the first proposition, appellant takes the position that the Hibernia Title Restoration Company was a mere agency of Tobin & Tobin, though that agency was not disclosed to the defendants; and that the assignment to plaintiff by Tobin & Tobin was sufficient to support the action. The defendants contend that no such relationship existed between the attorneys and the corporation, either in law or in fact. If this position be correct, obviously no action could be maintained by Tobin & Tobin's assignee, and the judgment of the lower court should be affirmed.

It is conceded that in the majority of jurisdictions, including California, an undisclosed principal may sue on a contract entered into by an agent for his benefit. The record here does not disclose any express contract of employment or agency; and if the latter relation existed between the corporation and Tobin & Tobin it must be inferred from the circumstances surrounding the situation and transaction. We are satisfied that a consideration of those circumstances compels the conclusion that such relationship did in fact exist. The uncontradicted testimony shows that Tobin & Tobin organized the corporation and owned practically all of its capital stock; that it controlled and dictated its management; that the corporation had no office, and no employees; never brought a suit in its name; that the room on the door of which was the corporation's name, or the prominent words in that name, was but one of the offices of Tobin & Tobin; that in fact the only appearance made by the corporation on the scene in any title restoration litigation was in the printed form of contract furnished by Tobin & Tobin to applicants for title restoration; in some advertising literature, and in a receipt given by an employee of Tobin & Tobin to George B. Mowry for the payment of $75 hereinbefore referred to.

From these facts it seems to us to conclusively follow that the Hibernia Title Restoration Company was a mere tool or instrumentality of Tobin & Tobin in the conduct of a particular branch of its business; that it was in fact a mere agency by which the copartnership solicited and received applications from the public to restore record title to real property, al-

though such agency was not disclosed to persons dealing with the company.

Precedent is of little value in determining this question of agency, as each case must necessarily depend upon its own particular circumstances. It is difficult, in our opinion, to conceive of a state of facts from which agency could be more conclusively inferred.

This brings us to the second ground relied upon for a reversal of the judgment.

The contract sued upon was brief in its terms and conditions, and it may not be amiss to incorporate it herein. Omitting certain data relative to the condition of the title, it is as follows:

"Application of Emma M. Mowry (married).

"San Francisco, April 4, 1907.

"To THE BOARD OF DIRECTORS OF THE HIBERNIA TITLE RESTORATION COMPANY.

"Gentlemen:—I hereby request your company to take all necessary proceedings to establish my title to all that real property situate in the city and county of San Francisco" (here follows description). "In consideration of your services relative to above I hereby agree to pay you $——— for attorneys' fees and all costs of suit not to exceed $75, and I hereby pay on account $———.·

"(Signed)     EMMA M. MOWRY, OWNER.

"By G. B. Mowry.

"Address, 620 Ivy Ave., S. F.

"The above fee shall not apply in case of contest in the superior or appellate court."

Plaintiff contended at the trial and here maintains that the printed *addendum* appearing just below the signature of the applicant, and providing that the sum limited in the contract should not apply in case of contest, constituted a part of the agreement.

The trial court specifically found that the parties did not intend or contemplate that it should, or that it was a limitation or a condition on the terms embodied therein. If the evidence is sufficient to sustain this finding of the trial court, it is obvious that irrespective of the question of agency, plaintiff is not entitled to recover the amount he claims.

It is well established, as asserted by the defendants, that in ascertaining the intention of the parties with reference to written contracts, courts are not always confined to the mere face of the writing, but should take into consideration the situation and relation of the contracting parties, and the circumstances surrounding the execution of the instrument. With this object in view, the trial court permitted evidence to be introduced as to what occurred at the time this agreement was executed. Such testimony is very brief, and is as follows: G. B. Mowry testified that he had spoken to his attorney, Mr. Johnson, who had agreed to perform the services for $75; that thereafter he received a notification from the Restoration Company requesting him to call at its office concerning this very matter, and that he saw a gentleman to whom he told what Mr. Johnson's charges would be; that he was informed by this gentleman that the amount was the same as the Restoration Company would charge. Mowry then stated that he would consult his wife, the owner of the property, and give an answer on the following day. This he did, informing the party with whom he had consulted on the previous day that the company could go on and perform the services. He testified that he was then asked to sign the contract heretofore recited, which he did. He claims that he read no portion of it, and that his attention was not called to the printed matter below the signature, nor to any terms of the contract providing for a larger fee in the event of a contest of the suit, and that he did not know that there were any other terms in the contract than those which the agent had stated.

W. B. Ryder, an employee of Tobin & Tobin, and the person referred to by Mr. Mowry as the person with whom he had conducted his negotiations, testified substantially to the same effect.

The above constitutes all the important evidence as to the circumstances under which the contract was executed. It will be observed that in the conversations had between Ryder and Mowry no mention was made of that portion of the contract which provided that the stated fee should be applied in case of a contest. But a party is presumed to have assented to all the terms of a written contract, when he signs it; and the place of the signature is immaterial except in cases where

an instrument is required by law to be subscribed. In the absence of fraud the positive terms of a contract cannot be lightly set aside. No fraud was pleaded, nor did the defendants pray for a reformation of the contract on the ground of mistake. No such issues are here presented. Clearly the evidence here presented to avoid the terms of the contract is insufficient for that purpose.

Irrespective of what we have said, the so-called *addendum* appeared just below and so near to the signature that it seems improbable that it could possibly escape the notice of the signer. Moreover, in construing agreements, courts follow, where it is possible, that construction which prevents a failure of justice. The amount that the defendants seek to limit appellant to in payment of the services of Tobin & Tobin is but a small portion of the actual outlay in costs alone.

It is further claimed that the trial court abused its discretion in permitting the addition of the second cause of action in the second amended complaint; and also that the assignment upon which the second cause of action was based was executed subsequent to the commencement of the action.

The original complaint was filed April 11, 1910, and was brought on the theory of an "account stated," the complaint being entitled "Complaint on account stated." Subsequently, and after a demurrer had been interposed, an amendment was filed. This document was entitled "Amended complaint on Account Stated," and set out substantially the same facts that had been included in the original complaint. To this amended complaint an answer was filed, and it was upon the issues tendered by these pleadings that the case first went to trial. Evidence was taken, and the case submitted. Thereafter plaintiff filed and served a notice of motion to set aside the order of submission that had been entered, and asked for leave to file a second amended complaint. The motion was granted, and a second amended complaint filed, which included a new count, viz.: the cause of action now relied upon by plaintiff. An answer was filed by the defendants, and upon the issues thus formed the case was finally tried.

The original pleadings were inadvertently omitted from the transcript, though included in the judgment-roll; and by stip-

ulation they have been certified to this court by the clerk of the superior court.

It is claimed by defendants that the motion, asking permission to amend and set up the second cause of action and the second amended complaint, was made over their objection, and that the amendment should never have been permitted by the court, for the reason that it set up an entirely new and separate cause of action from that already pleaded.

The record does not contain anything indicating any objection to the filing of the second amended complaint, nor any motion to strike it out in whole or in part; nor is there a bill of exceptions before this court on any ruling affecting the granting of a motion to amend or denying a motion to strike out.

Aside from the question that the point not appearing in the record cannot for the first time be made on appeal (*Groom* v. *Bangs,* 153 Cal. 456, 459, [96 Pac. 503]), no new cause of action was stated. The action was brought for the purpose of recovering upon an obligation claimed to be owing to Tobin & Tobin by the defendants. Whether the plaintiff sued on an account stated, or on the contract, the transaction out of which the action arose was one and the same; and the court was justified in granting the right to amend to meet the established facts. (*Third St. Imp. Co.* v. *McLelland,* 23 Cal. App. 369 [137 Pac. 1089].) We conclude therefore that there was no merit in this contention; nor in the further claim that the assignment upon which the second cause of action was based was made subsequent to the filing of the complaint. It appears from the testimony of Mr. Brittain that prior to the filing of the original complaint an assignment of the account sued on was made by Tobin & Tobin to the plaintiff, but out of an abundance of caution a second assignment was made prior to the filing of the second amended complaint. This second assignment was entirely unnecessary, as the original assignment was sufficient to show that it was the intention of the parties to pass title to the chose in action irrespective of the form in which the action was pursued. (*McIntyre* v. *Hauser,* 131 Cal. 11, 14, [63 Pac. 69].)

The judgment is reversed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 16, 1914.